**CONNOLLY et al. v. THE ACE et al. THE BOBBY.**

No. 36, Docket 20684.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1947.

---

[1] Stetler v. Boling, 52 Okl. 214, 152 P. 452, 454; Note, 85 A.L.R. 327.

[2] Berkowitz v. Kasparewicz, 121 Conn. 140, 183 A. 693, 696, 104 A.L.R. 1326.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libellants-appellees.

Horace M. Gray, of New York City, for claimants-respondents-appellants.

Before L. HAND, SWAN and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The diesel lighter "Ace" and the motor launch "Bobby" collided in the Kill Van Kull off New Brighton, Staten Island, about a quarter past two on the morning of October 20, 1944 under the following circumstances:

The "Ace," a workboat fifty-eight and one-half feet long with a beam of seventeen and one-half feet and a draft of five, left Sewaren, New Jersey, that morning, bound for Pier 1, Manhattan. She was properly showing all required lights and was navigating on her starboard side of the channel in charge of a pilot and engineer, both of whom were licensed men. The weather was clear, the visibility was good, and the tide was on the ebb, setting in an easterly direction. She had no lookout but, after passing Buoy No. 4, her engineer, who was at the wheel, saw the green light of a boat some seventy-five to one hundred yards away about four points on the port bow. He then blew one short blast which was not answered, and, while waiting for an answer, maintained his course and speed of between seven and eight knots until within ten or fifteen yards of the other vessel, when he threw his gear into neutral and then reverse in a futile attempt to avoid collision. The record does not show whether after first sighting the other ship, the navigator of the "Ace" continued to watch her or paid any more attention to her until the time when he threw the gear into neutral.

The boat collided with was the gasoline power launch "Bobby," a craft about forty feet long with a twelve and one-half foot beam and a thirty inch draft. She was carrying three passengers and being navigated at half speed, between five and six knots, by one of her crew who was an unlicensed man. Her running lights were burning brightly. When she was about three hundred yards off the Staten Island shore, her navigator first saw the "Ace," which was close aboard on the starboard hand. He then threw out his clutch and put his rudder hard left but, nevertheless, advanced across the bow of the "Ace." The "Ace" hit the "Bobby" and sunk her. The district court held both vessels at fault. The fault of the "Bobby" is now conceded and the only question is whether the damages should be divided.

The "Ace" as the privileged vessel was bound to hold her course and speed until it was, or should have been, apparent to her navigator that the "Bobby" would not, or could not, perform her duty to keep out of the way. Art. 21 of the Inland Rules, 30 Stat. 101, 33 U.S.C.A. § 206. The comparatively small "Bobby" was, of course, able to maneuver readily at the speed she was going and her failure to keep clear would not have been made known to the "Ace" even if she had had a lookout, until the vessels were in close quarters. The "Ace" was put to the difficult task of determining when, if at all, to alter her own course and speed in an attempt to neutralize the danger the "Bobby's" fault had created. All a lookout could have done here would have been to have sighted the "Bobby" earlier and then to have reported the facts concerning the "Bobby's" navigation continuously up to the time of the collision. Even had that

88

been done, the "Ace" would have herself violated the starboard hand rule if she had failed to hold on as she did to give the "Bobby" a fair chance to keep out of the way. Thus, whether or not the "Ace's" navigator continued to watch the "Bobby" after first sighting her, we think the plain fact is that any fault in failing to maintain a proper lookout, 30 Stat. 102, 33 U.S.C.A. § 221, neither did affect, nor could have affected, the navigation of the "Ace.", No information a lookout could have supplied would have required or justified any earlier change of course or speed. Under these circumstances the fault is immaterial. The Fannie, 11 Wall. 238, 20 L.Ed. 114; The Aurora, 2 Cir., 198 F. 383, § 1; 1 The Chicago, 2 Cir., 125 F. 712; Meyers Excursion & Navigation Co. v. The Emma Kate Ross, D.C., 41 F. 826.

Decree reversed and libel dismissed.